UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNADETTE ANNETTE SAMUEL, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL ACTION NO. 3:22-cv-00848 <br><br> (SAPORITO, M.J.) |

MEMORANDUM

The plaintiff, Bernadette Annette Samuel, brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying a claim for supplemental security income under Title XVI of the Social Security Act (the "Act"). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

I. BACKGROUND

On November 1, 2019, Samuel protectively filed an application for supplemental security income, asserting a disability onset date of November 1, 2019. Her claim was initially denied by state agency

reviewers on April 17, 2020, and upon reconsideration on October 20, 2020. The plaintiff then requested an administrative hearing.

A telephone hearing was held on April 20, 2021, before an administrative law judge, Mike Oleyar (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Nadine Henzes. The plaintiff was represented by counsel at the hearing.

On July 8, 2021, the ALJ denied Samuel's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Samuel was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Samuel had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Samuel had the severe impairments of: lumbar degenerative disc disease; lumbar neuritis; lumbago; spondylosis; radiculopathy; sciatica; pulmonary emphysema; chronic obstructive pulmonary disease; major depressive disorder; anxiety; and substance abuse disorder.

At step three, the ALJ found that Samuel did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 2, 2021).[1] In doing so, the ALJ considered Samuel's limitations in four broad functional areas as a result of her mental disorders, finding no more than moderate limitations in any of the four functional areas.[2] *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04 and 12.06, the ALJ also considered whether Samuel's mental disorders were "serious and persistent," finding that her

---

[1] We note that the agency's list of musculoskeletal disorders was extensively revised effective April 2, 2021, a few months before the plaintiff's application for disability and disability benefits was adjudicated by the agency. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

[2] These four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The ALJ found Samuel to be moderately limited in all four categories.

impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Samuel's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Samuel had the RFC to perform light work as defined in 20 C.F.R. § 416.967(a),[3] with the following limitations:

> [S]he could stand for five hours, walk for four hours, and must have the opportunity to alternate between sitting and standing every one hour for standing and every thirty minutes for walking. She could occasionally balance, stoop, kneel, crouch, crawl, and climb on ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally operate foot controls with her bilateral lower extremities. She could frequently reach with her bilateral upper extremities. She could occasionally operate a motor vehicle. She

---

[3] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 416.967(b).

> could tolerate occasional exposure to atmospheric conditions, extreme cold, heat, wetness, and humidity. She must avoid exposure to vibration and hazards such as unprotected heights and dangerous moving mechanical parts. She is limited to understanding, remembering, and applying simple instructions. She could tolerate frequent interaction with supervisors, coworkers, and the public. She is limited to perform detailed but uninvolved instructions, generally described as simple routine unskilled work, but not at a production rate pace such as assembly line work. She is limited to simple work related decisions in the work setting.

(Tr. 19–20.)

In making these factual findings regarding Samuel's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

At step four, the ALJ concluded that Samuel had no past relevant work.

At step five, the ALJ concluded that Samuel was capable of

performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Samuel was capable of performing the requirements of representative occupations such as marker (DOT # 209.587-034), office helper (DOT # 239.567-010), or document specialist (DOT # 207.685-014). Based on this finding, the ALJ concluded that Samuel was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on April 1, 2022, making the ALJ's July 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on May 31, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's

finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Samuel asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) The ALJ erred by failing to consider whether Samuel should have been considered a "individual of advanced age" rather than an "individual closely approaching advanced age"; and (2) the ALJ erred in failing to incorporate certain mental functional limitations into her RFC determination, despite having found persuasive the state agency psychological consultant opinions identifying those limitations.

Finding the first issue dispositive of this appeal and remanding the case to the agency to properly address the borderline age situation presented in this case, we do not reach the other issues. "A remand may produce different results on plaintiff's application, making discussion of the remaining claims moot." *Upshur v. Colvin*, 200 F. Supp. 3d 503, 513

n.3 (E.D. Pa. 2016).

At step five of the sequential review, the Commissioner bears the burden of showing that, considering the claimant's age, work experience, and RFC, he or she can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(v). To assist in this analysis, the agency has promulgated a set of Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, commonly referred to as the "grid rules" based on the grid-like format of its guidance. *See generally* 20 C.F.R. § 416.969; Soc. Sec. Ruling 83-10, 1983 WL 31251.

To apply the age factor, the regulations have established three age categories, which are used to apply the grid rules: (1) "younger person" for claimants under age 50; (2) "person closely approaching advanced age" for claimants age 50–54; and (3) "person of advanced age" for claimants aged 55 or older. *Id.* § 416.963(c)–(e). These categories were adopted to take into account the fact that age may be a factor in a person's ability to adjust to other work. *See id.* § 416.963(a).

The regulation further provides, however, that these age categories are not to be applied "mechanically" in what is termed "a borderline

situation." *Id.* § 416.963(b). But rather,

> [i]f you are *within a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* (emphasis added).[4]

The italicized language is the crux of this appeal. At the time of the ALJ's written decision, Samuel was a little more than 54½ years old. More precisely, she was five months and three days away from being 55 years old.[5] With all other vocational factors remaining the same, the grid rules directed a finding of "not disabled" if Samuel were considered a "person closely approaching advanced age," but a finding of "disabled" if Samuel were considered a "person of advanced age." *Compare* Medical-Vocational Guidelines Rule 202.13 (closely approaching advanced age) *with* Rule 202.04 (advanced age), 20 C.F.R. pt. 404, subpt. P, app. 2. The two sides dispute, however, whether Samuel's was indeed "a borderline

---

[4] For a more robust overview of the law governing such "borderline" situations, we commend to you an authoritative opinion by our sister court. *See generally Schneider v. Commissioner of Social Security*, Civil Action No. 21-4150, 2022 WL 3280109, at *3–*4 (E.D. Pa. Aug. 11, 2022).

[5] Samuel was born on December 11, 1966. The ALJ's decision was issued on July 8, 2021.

situation"—that is, whether a period of five months and three days fits within the ambit of "a few days to a few months."

The Commissioner points our attention to an unpublished, non-precedential decision by the Third Circuit, *Roberts v. Barnhart*, 139 Fed. App'x 418 (3d Cir. 2005). The *Roberts* court found that a claimant, who was between five and six months shy of her fiftieth birthday, did not present such a "borderline" case as there was no "authority extending the benefits of a 'borderline' age determination to persons like Roberts who are within five (5) to six (6) months of their fiftieth birthday." *Id.* at 420; *see also Schneider v. Commissioner of Social Security*, Civil Action No. 21-4150, 2022 WL 3280109, at *4 n.4 (E.D. Pa. Aug. 11, 2022) ("The [*Roberts*] court noted that there was an absence of authority to define borderline age as more than five months from the next desired age category."). The Commissioner notes that Samuel's age similarly fell between five and six months of her fifty-fifth birthday.

That dearth of authority recognized by *Roberts*, however, no longer exists. In the years following *Roberts*, courts wrestled with the question of just how long "a few days to a few months" was. But in 2016, the Commissioner settled the question, issuing new guidance for

adjudication of "borderline age situations." As the Commissioner has acknowledged in her own brief in this case,[6] on March 25, 2016, the agency added a provision to its manual pertaining to Hearings, Appeals, Litigation and Law ("HALLEX") addressing borderline age situations. This provision addressed the ambiguous "within a few days to a few months" language in its regulations, stating:

> SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. *Generally, SSA considers a few days to a few months to mean a period not to exceed six months.*

HALLEX I-2-2-42(B)(1) (S.S.A. Mar. 25, 2016) (emphasis added). The agency subsequently modified another internal guide, its Program Operations Manual System ("POMS"), as well to clarify how ALJs should apply borderline age analysis, instructing agency adjudicators that:

> We do not have a more precise programmatic definition for the phrase "within a few days to a few months." We define the term "a few" using its ordinary meaning, a small number. *Consider a few days to a few months to mean a period not to exceed six months.*

SSA POMS DI 25015.006(B) (S.S.A. eff. July 6, 2017) (emphasis added).

---

[6] *See* Comm'r Br. 16 n.5 (discussing the promulgation of HALLEX I-2-2-42 effective March 25, 2016), Doc. 17.

"Since this internal guidance to adjudicators became effective, courts nationally have been more willing to accept *six months* as the outer limit on proximity to the next age category, and to require consideration when a claimant age is within that range." *Schneider*, 2022 WL 3280109, at *4 (collecting cases).

At the time of the ALJ's decision in this case, Samuel was five months and three days short of her fifty-fifth birthday, at which time she would have unquestionably fit within the "advanced age" category, which in turn would have dictated a "disabled" finding at step five. Under the Commissioner's own guidance, because this period was less than six months, Samuel was "within a few days to a few months" of reaching the next older age category, and the ALJ was required to undertake a borderline age analysis. *See Schneider*, 2022 WL 3280109, at *5; HALLEX I-2-2-42(B)(1); SSA POMS DI 25015.006(B); *see also Woods v. Colvin*, 218 F. Supp. 3d 204, 208–09 (W.D.N.Y. 2016) ("[B]ecause it is the Commissioner who bears the burden at step five, it is her burden to establish that a case is not a borderline case where she relies on the medical vocational rule to deny a claim."). But she did not.

It is well established that

> an ALJ commits a reversible error of law when he or she fails to analyze whether the claimant was borderline with respect to his age when applying the Grids at Step Five. Where a borderline age analysis could potentially change the disability determination, and the ALJ does not address or exercise her discretion to apply the age categories in a non-mechanical fashion, there is no question that remand is the appropriate remedy.

*Schneider*, 2022 WL 3280109, at *5 (citation omitted).

Under the circumstances presented, we are unable to conclude that substantial evidence supports the ALJ's step-five determination that, considering the claimant's age, work experience, and RFC, she can perform other work that exists in significant numbers in the national economy.

### III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Samuel was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying her application for supplemental security income benefits will be vacated and the case will be remanded for further proceedings consistent with this opinion.

An appropriate Order follows.


Dated: September 19, 2023         *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge